## Henry W. Fuchs et al., Plaintiffs in Error, v. David H. Daskal et al., Defendants in Error.

### Gen. No. 31,189.

1.  CORPORATIONS—*when securities not within Class D.*  The court
properly sustained defendants' demurrer to a bill for the rescinding
of a sale of securities alleged to belong to Class D under the Securities
Act, Cahill's St. ch. 32, ¶¶ 262, 265, 289, which also alleged such sale
was illegal thereunder, and that defendants made repeated sales of the
securities, but which alleged facts showing only a single sale at one

time by the bona fide owners of such securities, since the transaction was not within Class D, but Class B under Cahill's St. ch. 32, ¶ 258, which sale was legal without meeting the requirements for sales of Class D securities.

2. CORPORATIONS—*when breach of escrow agreement does not furnish ground for relief under the Securities Law.* An escrow agreement concerning securities classed as B under Cahill's St. ch. 32, ¶ 258, and hence not requiring such an agreement, gives to one agreeing thereto no right to seek a remedy for a breach thereof by a bill to rescind a sale of the securities, joining with other purchasers therefor.

Error by plaintiffs to the Circuit Court of Cook county; the Hon. IRA RYNER, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1926. Affirmed. Opinion filed March 29, 1927.

HARRY A. BIOSSAT, for plaintiffs in error.

D'ANCONA & PFLAUM, for David H. Daskal, George H. Daskal and David Davis, defendants in error.

MR. JUSTICE FITCH delivered the opinion of the court.

A general demurrer was sustained to complainants' amended bill, filed under section 37 of the Illinois Securities Law, Cahill's St. ch. 32, ¶ 270, and the complainants electing to stand by it, their amended bill was dismissed for want of equity. The question presented by this writ of error is whether the facts stated in the amended bill and admitted by the demurrer constitute a sale of securities in violation of that law.

It is alleged in the amended bill that the Bong Battery Corporation, a Delaware corporation, with a capital stock consisting of 100,000 shares of the par value of $10 each, issued 50,000 shares thereof in exchange for patent rights, good will, promotion fees, and other intangible assets, and that on March 23, 1923, the owners of said 50,000 shares deposited the certificates representing the same in escrow with the Century Trust & Savings Bank, a depository designated by the secretary of state, as owners of such stock

are required to do by section 12 of the Securities Act, Cahill's St. ch. 32, ¶ 265; that the escrow agreement, a copy of which is attached to the bill as an exhibit, contains the provisions specified in section 12 of the Securities Act and the further provisions that said stock "will not participate in any dividends which may be declared or paid, unless and until such securities are qualified in Class 'C' under the Illinois Securities Law," and that said securities "shall not be sold nor transferred directly or indirectly during the time said securities remain on deposit with the above named trustee, but that such deposit of such securities shall not affect the voting powers of the owners of such securities"; that the defendants David H. Daskal, George H. Daskal and David Davis each deposited 7,500 shares; that at the time of such deposit, they "were the owners of said 22,500 shares" and "continued to own same" until March 1, 1924, when they sold "their interest in and to said 22,500 shares" to the complainants for $13,000, of which sum five of the six complainants and eight of the thirteen defendants contributed specified amounts.

The bill further alleges that on April 12, 1923, the Bong Battery Corporation filed with the secretary of state a statement "in compliance with Paragraphs 1 and 13 of Section 9" of the Illinois Securities Law, signed by the defendant David H. Daskal as president, and David Davis as treasurer, in which it was stated "that it was proposed to issue and offer for sale a total of 40,000 shares" of the stock of that corporation, of which "it was proposed to offer for sale in the State of Illinois" 20,000 shares; that said stock was "then in the treasury" of said corporation, and that under the Illinois law "said 20,000 shares of said treasury stock of said Bong Battery Corporation was the only stock that said defendants or said corporation were legally entitled to sell in the State of Illinois under the statement and information filed" by them

with the secretary of state; that the 22,500 shares of stock sold to complainants "was not Treasury Stock and was not the stock referred to in the statement and information filed" with the secretary of state, and it was therefore unlawful to sell "any part or portion of the stock deposited in escrow"; that the "sales" thereof to complainants "were a violation of section 36 of said act" and prima facie evidence of fraud; that complainants have elected to rescind the same, and therefore tender to the sellers "all interest in said escrow stock transferred" by them and demand the return of the consideration paid therefor. The bill prays that said "sales" be declared void and that defendants be required "to accept the assignments of interest in and to said escrow stock" and to pay back the sum paid therefor, together with reasonable attorneys' fees.

Sections 9, 12 and 36 of the Securities Law, Cahill's St. ch. 32, ¶¶ 262, 265, 289, mentioned in the bill and cited and relied on in complainants' brief, refer in terms to Class D securities only. Section 9 forbids the sale of any security in Class D until certain "statements and documents" are filed in the office of the secretary of state. Section 12 provides that *"If the statement as to securities in Class 'D'* shall disclose that *any of such securities* shall have been * * * issued for * * * intangible assets," such securities shall be placed in escrow as therein provided. Section 36 provides that "It shall be unlawful for any officer, director, solicitor, broker or agent, to sell or offer for sale *any securities in Class 'D,'* in any other manner or form than specifically set forth in * * * section 9 of this Act."

As all these sections refer expressly and only to Class D securities, it is apparent that the legal conclusions alleged in the bill, as above stated, are correct only upon the theory or assumption that the transaction sought to be annulled was a sale of Class D securities, and this is the theory advanced by complain-

ants' counsel.  If the transaction was one included in the statutory definition of securities in Class B, then the provisions of the statute relating only to sales of Class D securities have no application.

Section 5 of the Securities Act, Cahill's St. ch. 32, ¶ 258, begins as follows: "Securities in Class 'B', *being exempted sales,* shall include: (1) An isolated sale of any security by a *bona fide* owner thereof, or his representative, for the owner's account, such sale not being made in the course of repeated and successive transactions of a like character, and such owner not being a broker or dealer in securities or an underwriter of such securities;  *  *  *.

"Securities when disposed of by the persons and in the manner provided by this section, shall not be subject to the provisions of this Act in such transactions."

We think it affirmatively apears from the allegations of the bill above recited that the transaction in question was an isolated sale of securities made by *bona fide* owners, for their own account.  There is no allegation that such owners were brokers or dealers in securities, or underwriters of such securities.  There is an averment that they made "repeated sales" of their interest in the stock placed by them in escrow, but no facts are given supporting that statement.  The facts which are given show a single transaction only— a sale made at one time (March 1, 1924) of their whole interest in the escrowed stock to complainants for "the sum of $13000."  If the facts thus properly alleged are true, the sale was certainly not a sale "made in the course of repeated and successive transactions of a like character," for, on the facts stated, there could be only one such sale, and the demurrer admits only such facts as are well pleaded.  It follows, we think, that the transaction which the bill seeks to annul is by the terms of section 5 of the Securities Act expressly exempted from the provisions and penalties of that act.

While, by the terms of the escrow agreement, the owners of the stock in question agreed that it should not be sold or transferred directly or indirectly while it remained in escrow, the statute does not require such an agreement to be made. Only one of the complainants was a party to that agreement. His remedy, if any, is not in this proceeding. The bill is not drawn on that theory and states no ground for equitable relief on that score.

For the reasons stated, the decree is affirmed.

*Affirmed.*

GRIDLEY, P. J., and BARNES, J., concur.